**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JAMES GRAY,                              *

Plaintiff,                               *

v.                                       *          Civil Action No. SAG-22-77

LT. PLAUGER, *et al.*,                   *

Defendants.                              *
                                        ***

## MEMORANDUM OPINION

Self-represented Plaintiff James Gray, a federal inmate currently incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"), filed suit against Lt. Royce Plauger, Nurse Practitioner Kristi Crites, Nurse Denise VanMeter, Nurse Justin Sines, and Officer Jordan Dye, pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). ECF 1. In a verified Complaint, Gray claims that Defendants used excessive force against him and denied him medical care in violation of the Eighth Amendment to the United States Constitution, and confined him in segregation in violation of the Due Process Clause of the Fifth Amendment. *Id.* at 1. He seeks injunctive relief and monetary damages. *Id.* at 14-15.

On June 21, 2022, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 10. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Gray that the failure to file a response in opposition to Defendants' Motion could result in dismissal of his Complaint or a judgment in favor of Defendants. ECF No. 12. On July 20, 2022, Gray noted his opposition to the Motion, reiterating the allegations stated in his Complaint, and he filed a Motion to Move Forward with this Case, asking the Court to rule on the matter. ECF No. 15. Defendants filed a reply, ECF No. 16, and Gray filed a surreply, which included a request for appointment of counsel, citing his indigence and ignorance of the

law, ECF No. 17.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). Gray's Motion to Move Forward with this Case shall be granted. Defendants' dispositive motion, construed as a Motion for Summary Judgment, shall also be granted. As the case is not proceeding, Gray's request for court-appointed counsel shall be denied. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (recognizing that the Court appoints counsel only in exceptional circumstances, which hinges, in part, on whether the plaintiff has a colorable claim).

## Background

### A. Gray's Allegations

Gray claims that at approximately 12:05 a.m. on December 20, 2021, while incarcerated at FCI Cumberland, he started vomiting and felt severe pain in his stomach. Compl., ECF No. 1 at 2. Once the medical unit was accessible at 6:30 a.m., he submitted a sick call request and was seen by Defendant Crites at about 7 a.m. *Id.* at 3. Gray states that Crites gave him medicine for vomiting, which ultimately proved ineffective, but did not give him anything for stomach pain. *Id.* Crites then placed him in a medical observation room, where he remained for the next 10 hours without treatment or care. *Id.* During that time, Gray repeatedly complained of severe pain and asked to be taken to a hospital. *Id.* At the end of Crites's shift, at approximately 5 p.m., Gray was transported to a local hospital, where he claims he was advised to have surgery to treat a "high hernia" and a "lower hernia." *Id.* at 4.

Gray returned to FCI Cumberland at about 7 p.m. on December 21, 2021. *Id.* While eating a hamburger for lunch on the following day, he began to have severe stomach pains again and repeated vomiting. *Id.* Upon his arrival at the medical unit, Crites informed him that he should not be eating greasy food and placed him on a special diet. *Id.* at 5. Gray then lost consciousness

in the hallway and was transported to the medical observation room.  *Id.*

After 20 minutes, Gray pressed the emergency button to request a return trip to the hospital. *Id.*  Crites responded to the call, along with Defendants VanMeter and Lt. Plauger.  *Id.*  According to Gray, Lt. Plauger yanked him off the bed and shoved him on the ground, causing him to hit his head.  *Id.* at 6.  VanMeter also grabbed Gray's shirt and yanked him backwards, causing him to hit his head on the ground.  *Id.*  Ten minutes later, other guards handcuffed Gray and transferred him to the segregated housing unit ("SHU"), telling him that he was there for "medical observation." *Id.* at 7.

At approximately 11:05 p.m. on December 22, 2021, Gray had a seizure.  *Id.*  In response to Gray's repeated requests for medical attention, Lt. Plauger arrived with other officers, dragged Gray across the floor, yelled at him for pressing the emergency button, and shoved him on the ground.  *Id.*  The officers then moved Gray to a small dressing room with no toilet or sink.  *Id.* After a "substantial period of time," Lt. Plauger returned Gray to the SHU cell and instructed Gray's cellmate to assault him.  *Id.* at 8.  The cellmate did not comply.  *Id.*  Thereafter, Officer Dye wrote an incident report stating that Gray violated a prison regulation (Prohibited Act 208 – Interfering with Security Device) by pressing the duress button.  *Id.*

Gray states that he remained in the SHU until January 5, 2022, without receiving medical care.  *Id.* at 9.  During that time, he requested forms for filing a formal request to staff, but they were never provided.  *Id.*  Gray was able to write a note to Crites, who told him that he was scheduled to see a provider and that he was to remain in the SHU for medical observation.  *Id.* at 10.  Gray also sent a note complaining about being served greasy foods, to which Defendant Sines responded that "the outside physician did not write an order for any special diet."  *Id.*

On January 11, 2022, Gray was transferred to his regular housing unit but was returned to

the SHU immediately after notifying his unit manger about the issues raised in this Complaint.  *Id.* at 11.  He claims that he has "exhausted all of the administrative remedies available to him."  *Id.* at 12.

**B. Defendants' Response**

According to Defendants, Gray arrived at FCI Cumberland on December 13, 2021. Medical Records, ECF No. 10-4 at 8.  During his intake screening, Gray stated that he illegally used Suboxone daily while at the Northeast Ohio Correctional Center, including the previous day, December 12, 2021.  *Id.* at 10.  Thus, he was subjected to daily evaluation for opiate withdrawal symptoms.  Gray reported for the evaluation on December 14-17, 2021, but he did not appear on December 18-19, 2021.  *Id.* at 27-40.  On December 20, 2021, Gray arrived and demonstrated symptoms of opiate withdrawal, including upset stomach, sweating, tremor, restlessness, and anxiety or irritability.  *Id.* at 41, 45-47.

While in the medical unit, Gray was given medication for pain, nausea, and vomiting.  *Id.* at 50.  In addition, an x-ray and lab blood work were performed.  *Id.* at 52.  While awaiting the results, Gray remained housed in health services under observation.  *Id.* at 53.  Gray's lab results came back within the normal limits, except his white blood cell count was elevated, which alarmed Crites.  Although the elevation was most likely caused by the opioid withdrawal, Crites spoke to the Clinical Director and it was decided that Gray should be taken to the local emergency room for a CT scan of his abdomen, to rule out other causes.  *Id.* at 63.

After further evaluation and testing at the University of Pittsburgh Medical Center Western Maryland, Gray was diagnosed with epigastric pain secondary to gastritis, hiatal hernia with gastric narrowing, right inguinal hernia, and constipation.  *Id.* at 97, 101.  Due to gastric narrowing, Gray was regurgitating food, which in turn caused pain.  *See id.* at 107-08.  Gray was discharged with

medication and directed to eat a bland diet until his symptoms resolved. *Id.* No surgery was indicated. *Id.*

Upon Gray's return to FCI Cumberland, Crites prescribed medication for the treatment of gastritis and offered Medication Assisted Treatment for Medications for Opioid Use Disorder. *Id.* at 153, 159. After Gray opined that the hospital discharged him too early, Crites witnessed Gray lowering himself to the floor, as if he was trying to appear like he was having a seizure. *Id.* at 167-68. However, as he was not sweating, nor did he urinate or defecate on himself, Crites did not think that Gray was actually having a seizure. *Id.* Nonetheless, Gray was transported via stretcher to an observation room for monitoring. *Id.* After being given intravenous fluids and Zofran, Gray was returned to a room in the medical unit, where he laid across the food tray table and gradually lowered himself to the floor. *Id.* When Lt. Plauger and Crites responded, Gray displayed even more seizure-like activity. *Id.* However, when the Captain arrived, he did not have any seizures. *Id.*

Gray was then taken to the SHU for monitoring. Decl. of Crites, ECF No. 10-4 at 5-6. While in the SHU, nurses made daily rounds, except Crites was on vacation from December 24 to January 3, 2022. *Id.* Gray was seen on January 11 and January 19, 2022, during which time he reported no injuries or health issues. ECF No. 10-4 at 216-18.

With regard to Gray's claim that Nurse Sines refused to write an order for a "special diet," Sines states that he used due diligence and consulted with Gray's provider in determining that Gray was never ordered a special diet. Decl. of Sines, ECF No. 10-6 at 2. Instead, Gray was instructed to have a bland diet until his issues resolved. *Id.* In addition, Sines states that Gray had the opportunity to eat from the heart healthy menu but chose from the regular menu. *Id.* at 2-3.

Defendants also address Gray's allegation that Officer Dye improperly charged him with

interfering with a security device.  Officer Dye states that he was working in the SHU on December 22, 2021, when an inmate duress call button went off.  Decl. of Dye, ECF No. 10-7 at 2-3.  Officer Dye approached Gray's cell, and Gray requested medical treatment.  *Id.*  Officer Dye then called medical staff but was told that they would see Gray in the morning, as they had already seen him earlier that day.  *Id.*  Officer Dye relayed the information and directed Gray not to hit the inmate duress button again.  *Id.*  Gray, however, continued to hit the button.  *Id.* at 3.  Thus, Officer Dye wrote Gray an incident report for interfering with the security device.  *Id.*

Defendants assert that while in Federal Bureau of Prisons ("BOP") custody, Gray has not filed any administrative remedies.  Decl. of Misty Shaw, BOP Mid-Atlantic Regional Office Paralegal, ECF No. 10-3 at 1.  Although Gray claims that FCI Cumberland staff have refused to give him forms necessary for filing a formal grievance he submitted an "inmate request to staff" on January 23, 2022.  ECF No. 10-4 at 255.

## Standards of Review

Defendants' dispositive motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual

disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion as one for summary judgment "in the alternative" and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Gray was provided such notice. He also received notification from the Clerk of Defendants' dispositive motion and the opportunity to reply with exhibits and declarations and has done so. Thus, conversion of Defendants' motion to one for summary judgment is appropriate and this Court will consider the exhibits filed.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d

308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).   "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). Because plaintiff is self-represented, his submissions are liberally construed.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial."   *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

### Discussion

In his Complaint, Gray alleges Eighth Amendment excessive force claims against Crites, VanMeter, and Lt. Plauger; Eighth Amendment deliberate indifference claims against Crites and Sines; and a Fifth Amendment due process claim against Officer Dye.   ECF No. 1 at 8, 13-14.   In response, Defendants contend that: (1) VanMeter and Crites are entitled to absolute immunity; (2)

Gray failed to exhaust his administrative remedies; (3) Gray has not shown that Defendants acted with deliberate indifference, used excessive force, or violated his due process rights; (4) some of Gray's *Bivens* claims are not cognizable under *Ziglar v. Abbasi*, 137 S. Ct. 1842 (2017); (5) Defendants are entitled to qualified immunity; and (6) Gray is not entitled to injunctive relief. ECF No. 10-1.

### A.  Public Health Service Officers

Defendants first assert that at the time of the relevant events, Defendants Crites and VanMeter were commissioned officers of the United States Public Health Service ("PHS") and are thus immune from suit under *Bivens* for an Eighth Amendment claim.  By statute, commissioned officers and employees of PHS are immune from liability for damages "resulting from the performance of medical . . . functions."  42 U.S.C. § 233(a).  This provision "precludes *Bivens* actions against individual PHS officers or employees" for harm arising from the performance of their duties.  *Hui v. Castaneda,* 559 U.S. 799, 812 (2010).  The sole remedy provided for persons injured by PHS commissioned officers is through the Federal Tort Claims Act.  Thus, the Eighth Amendment *Bivens* claims against Crites and VanMeter will be dismissed.

### B.  Failure to Exhaust

In order to assert a *Bivens* claim in federal court, inmates are first required to exhaust all inmate grievance procedures.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Gibbs v. Bureau of Prison Office*, 986 F.Supp. 941, 943–44 (D. Md. 1997) (dismissing *Bivens* claim based on failure to fully exhaust administrative remedies).  Defendants raise the affirmative defense that Gray has failed to exhaust his administrative remedies.  If Gray's claims have not been properly presented through the administrative remedy procedure, they are barred by to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, which is pertinent part provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. §1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532; *see also Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 F.App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

A claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000)).

An inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see also Langford v. Couch*, 50 F.Supp.2d 544, 548 (E.D.Va. 1999) ("The second PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in

10

accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits).'"  *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The BOP has established an Administrative Remedy Program for inmates to resolve concerns related to their confinement.  *See* 28 C.F.R. § 542.10 *et seq.*  Inmates must first attempt informal resolution with staff.  *See* 28 C.F.R. § 542.13.  If an inmate is unable to resolve his complaint informally, he may file a formal written complaint using the appropriate form within 20 calendar days of the date of the occurrence on which the complaint is based.  *See* 28 C.F.R. § 542.14(a).  If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Director within 20 calendar days of the Warden's response.  *See* 28 C.F.R. § 542.15(a).  If the inmate is still dissatisfied, he may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, D.C., using the appropriate form.  The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response.  *Id.*  An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels.  *See Woodford*, 548 U.S. at 90; *see also Gibbs*, 986 F.Supp. at 943–44 (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

Here, Defendants assert that Gray has not filed any administrative grievances while in BOP custody.  Their assertion is supported by a Declaration from Misty Shaw, the Paralegal at the Mid-Atlantic Regional Office of the BOP, stating that following a review of the SENTRY

Administrative Remedies database, "[n]o remedy data exists" for Gray.  ECF No. 10-3 at 1.  In response, Gray summarily asserts that he filed the required forms "with counselors" and the "Regional Office," but they were denied.  ECF No. 17 at 2.  Although he seemingly had access to the forms, there is nothing in the record, nor has Gray submitted any evidence, to rebut Defendants' evidence or create a genuine issue of material facts as to his fulfillment of the four steps required for exhaustion.  In sum, Gray has failed to adduce any evidence to defeat Defendants' summary judgment motion.  *See Bouchat*, 346 F.3d at 525 ("A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.") (citation omitted).   Accordingly, Defendants' Motion, construed as on for summary judgment, shall be granted.

In any event, even if Gray had exhausted his administrative remedies, his claims would fail, as explained below.

### C.  Excessive Force & Due Process Claims

Pursuant to *Bivens*, Gray raises a claim that Lt. Plauger violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force and Officer Dye violated his due process rights under the Fifth Amendment by improperly charging him with a rule violation.  The Supreme Court has clarified over the years that "a *Bivens* remedy will not be available if there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'"  *Abbasi*, 137 S.Ct. at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).  An Eighth Amendment claim of deliberate indifference to a serious medical need may be pursued through a *Bivens* claim.  *See Carlson*, 446 U.S. at 18-19.  However, for the reasons stated below, *Bivens* does not extend to encompass Gray's excessive force and due process claims.

"[T]he question of whether to provide a *Bivens* remedy should be informed and limited by separation-of-powers principles." *Tun-Cos v. Perrotte*, 922 F.3d 514, 522 (4th Cir. 2019). The *Abbasi* Court formulated a two-step inquiry for determining if a *Bivens* remedy is available, requiring that courts first look to whether "the statutory or other legal mandate under which the officer[s] were operating" differs "'in [any] meaningful way' from the three cases[1] in which the Court has recognized a *Bivens* remedy." *Id*. at 523 (quoting *Abbasi*, 137 S.Ct. at 1859). If there is no meaningful contextual difference, then a *Bivens* remedy remains available. *Id*. If the context is new, however, this Court is required to consider whether there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S.Ct. at 1857. In other words, the inquiry is *who* should decide that a damages remedy should exist – the legislative branch or the judiciary. *Id*. Importantly, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

Here, the constitutional violations alleged by Gray differ from those recognized in *Abbasi*. Thus, the Court must determine whether any "special factors counsel[] hesitation" in recognizing a new remedy "in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857, 1859. "The focus of the special-factors inquiry is 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Annappareddy v. Pascale*, 993 F.3d 120, 137 (4th Cir. 2021) (quoting *Earle v. Shreves*, 990 F.3d 774, 779 (4th Cir. 2021)). "If there are alternative remedial

---

[1] The three cases referenced by the *Abbasi* Court are: *Bivens*, 403 U.S. 388, 389-98 (1971) (remedy available for Fourth Amendment claim against federal agents after they handcuffed a man in his own home without a warrant); *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (recognizing *Bivens* remedy in suit against a Congressman by former employee who claimed sex discrimination in violation of the equal protection clause of the Fifth Amendment); and *Carlson v. Green*, 446 U.S. 14, 19 (1980) (recognizing damages remedy under *Bivens* for Eighth Amendment violation by federal jailers when they refused to treat a prisoner-plaintiff's asthma).

structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert v. Boule*, 142 S. Ct. 1793, 1804 (2022) (quoting *Abbasi*, 137 S.Ct., at 1858); *see also Tun-Cos*, 922 F.3d at 526 ("[W]here Congress has provided an alternative remedial structure . . . , that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); *Attkisson v. Holder*, 925 F.3d 606, 621-22 (4th Cir. 2019) ("Indeed, if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

As Defendants correctly note, adequate alternative remedies exist for prisoners. The Supreme Court has recognized that "federal prisoners could, among other options, file grievances through an 'Administrative Remedy Program.'" *Egbert*, 142 S. Ct. at 1806. Here, the administrative grievance procedure was available to Gray, yet he failed to utilize it. The existence of this alternative remedial scheme counsels against extension of *Bivens* to Gray's excessive force and due process claims.

### D. Deliberate Indifference

As previously stated, an Eighth Amendment claim of deliberate indifference to a serious medical need may be pursued through a *Bivens* claim. *See Carlson*, 446 U.S. at 18-19. Thus, Gray's claim that Nurse Sines wrongfully denied him a special diet is cognizable here.

To state a claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure

14

it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016).

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40.  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  *Brice v. Va. Beach Corr. Ctr*., 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).  The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).  While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).

Here, Gray claims that Nurse Sines was deliberately indifferent to his serious medical

needs because he refused to write an order for a special diet.  However, as Sines explained, Gray's request was denied only after Sines used due diligence in looking into the matter.  After speaking to Gray's provider, Sines clarified that he was never ordered a special diet.  Rather, Gray was instructed to stick to a bland diet until his gastrointestinal issues resolved.  Indeed, Gray's discharge papers from the hospital state only that he is to "continue on a bland soft diet until the symptoms with swallowing resolve."  ECF No. 10-4 at 108.  On this record, Gray has not shown that Sines failed to make a sincere and reasonable effort to address his medical problem.  In other words, Plaintiff has not presented facts to support a cognizable claim of deliberate indifference to a serious medical need.  Therefore, even if Gray had exhausted his administrative remedies, his deliberate indifference claim would fail on the merits.

Because Gray has failed to adduce any facts that demonstrate he is likely to succeed on the merits, his request for injunctive relief shall be denied.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (stating that a party seeking injunctive relief must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest).[2]

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment, is granted.  Gray's Motion to Move Forward with this Case is also granted.  However, his request for counsel is denied.

---

[2] In light of the Court's ruling, it is not necessary to address Defendants' argument regarding qualified immunity.

A separate Order follows.


<u>March 8, 2023</u>                           _____/s/_____
Date                                      Stephanie A. Gallagher
                                          United States District Judge